**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
DEMOS P. DEMOPOULOS, DANIEL J. GATTO,
KENNETH BARRETT, WILLIAM CASSESE,
and JOHN A. CURCIO, as Trustees and Fiduciaries
of the LOCAL 854 HEALTH & WELFARE
BENEFITS PLAN,

|                          |                                    |
|--------------------------|------------------------------------|
|              Plaintiffs, | **REPORT AND**<br>**RECOMMENDATION** |
|         -against-        | CV 18-4813 (JMA) (AKT)             |
| DR. SAMEH H. AKNOUK DENTAL<br>SERVICES, PC, | |
|              Defendant.   |                                   |

------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff Trustees and Fiduciaries of the Local 854 Health and Welfare Benefits Fund

("Health Fund") and Local 854 Pension Fund ("Pension Fund") (collectively, "Plaintiffs" or the

"Funds") "commenced this action against Defendant Dr. Sameh H. Aknouk Dental Services

("Aknouk Dental"), pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. §§ 1132(a)(3), 1145 ("ERISA").  *See generally*

Amended Complaint ("Am. Compl.") [DE 14].  The Trustees seek to recover delinquent

contributions owed to the Funds under the terms of a collective bargaining agreement, din

addition to interest and reasonable attorney's fees and costs.  *Id.*

Aknouk Dental has moved for summary judgment, pursuant to Rule 56 of the Federal

Rules of Civil Procedure ("Fed. R. Civ. P."), arguing chiefly that it is not obligated to make

contributions to the Funds for part-time employees under the terms of the collective bargaining

agreement.  *See generally* Defendant's Memorandum of Law in Support of Motion for Summary

Judgment ("Def.'s Mem.") [DE 45-4]; Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Opp'n") [DE 46]; Defendant's Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Defs.' Reply") [DE 47].  The Trustees cross-move for summary judgment arguing that the terms of the collective bargaining agreement require contributions to the Funds for all employees, without regard to their part-time or full-time status.  On that basis, the Funds seek judgment as a matter law on their claim for delinquent contributions for part-time employees.  *See generally* Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Pls.' Mem.") [DE 48-3]; Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment ("Def.'s Opp'n) [DE 49]; Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Pls.' Reply") [DE 50].  Judge Azrack referred the cross-motions for summary judgment to this Court for a Report and Recommendation as to whether the motions should be granted.  *See* May 15, 2021 Electronic Order.

For the reasons which follow, this Court respectfully recommends to Judge Azrack that the parties' cross-motions for summary judgment be DENIED.

II.  **BACKGROUND**

A.  **The Undisputed Material Facts**

Plaintiffs are Trustees and Fiduciaries of the Health Fund and of the Pension Fund. Plaintiffs' 56.1 Statement of Material Facts ("Pls.' SOMF") [DE 48-1] ¶ 1.[1]  The Funds are

---

[1]    Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement means that the Court has deemed the underlying factual allegation undisputed.  Any citation to a Rule 56.1 statement incorporates by reference the documents cited in it.  Where relevant, however, the Court may cite directly to an underlying document.  The Court has deemed undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  *See Stewart v. Fashion Inst. of Tech.,* No. 18-CV-12297, 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("Pursuant to Local Civil Rule 56.1, the movant's

"employee benefit plans" and "multiemployer plans," as defined in Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37).  They are also fiduciaries pursuant to the Agreement and Declaration of Trust of Health and Welfare Benefits Fund, Local Union 854, I.B.T. (the "Health Trust Agreement") and the Agreement and Declaration of Trust of Local 854 Pension Fund (the "Pension Trust Agreement") (collectively, the "Trust Agreements").  *Id.* ¶¶ 3-4; *see* Health Trust Agreement, attached to the Affidavit of Patricia Egidio, Administrator of the Funds ("Egidio Aff.") as Ex. A [DE 48-5]; Pension Trust Agreement, attached to Egidio Aff. as Ex. B [DE 48-6].  The Funds are governed by the Trust Agreements.  *Id.* ¶ 4.

Defendant Aknouk Dental is a professional corporation operating a dental practice in Bronx County, New York.  Defendant's Rule 56.1 Statement of Material Facts ("Def.'s SOMF") [DE 45-1] ¶ 1.  From 2014 to 2017, Aknouk Dental was party to a series of collective bargaining agreements with Local 553, I.B.T. (the "Union").  Pls.' SOMF ¶ 6.  In 2014, Aknouk Dental entered into a collective bargaining agreement (the "2014 CBA") with the Union which covered the period from April 17, 2014 through April 18, 2017.  *Id.* ¶ 7; *see* 2014 CBA, attached to Egidio Aff. as Ex. C [DE 48-7].  In 2017, Aknouk Dental entered into a memorandum of agreement (the "2017 MOA") with the Union which renewed the 2014 CBA, with certain

---

'statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. New York City Hous. Auth.*, No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881, 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Local Rule 56.1 requires ... that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). Additionally, to the extent a party's Rule 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded such statements.  *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 1643781, at *1 (E.D.N.Y. Apr. 2, 2020) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012)).

modifications, covering the period from April 17, 2017 through April 17, 2020. *Id*. ¶ 8; *see* 2017

MOA, attached to Egidio Aff. as Ex. D [DE 48-8].  In accord with the 2014 CBA, Aknouk

Dental was required to make certain contributions to the Funds for covered employees.  *Id*.

¶¶ 7-8.

> Article 1 of the 2014 CBA defines the "bargaining unit" and provides:

> The Employer recognizes the Union as the sole and exclusive bargaining agent for all of its employees, excluding supervisor, guards and procession employees as defined in the Labor Management Relations Act of 1947."

*Id*. ¶ 10; 2014 CBA, Art. 1, Egidio Aff., Ex. C.  With respect to the Health Fund, Article 25 of

the 2014 CBA provides, in pertinent part, as follows:

> Effective May 15, 2015, the Employer will contribute $751.00 per month per eligible employee, Plan 5, to Health & Welfare Benefits Plan, Local 854, I.B. of T.

> Employees shall become eligible to participate in the Plan 5 medical benefits of the Health & Welfare Benefits Plant [sic], Local Union 854, International Brotherhood of Teamsters, following the receipt by the Trustees of two (2) consecutive monthly contributions from the Employer on the employee's behalf.

*Id*. ¶ 11; 2014 CBA, Art. 24, Egidio Aff., Ex. C.  As to the Pension Fund, Article 26 of the 2014

CBA provides that

> Effective May 1, 2015, the Employer agrees to contribute monthly to the Trustees of the Local 854 Pension Fund, without any deductions from employees' pay, 6% of the gross weekly salary, for the remainder of this agreement, for all employees covered by this Agreement who have completed their initial thirty (30) day trial period in accordance with the Trust Agreement establishing the Trust as amended and as may hereafter be amended.

*Id*. ¶ 14; 2014 CBA, Art. 25, Egidio Aff., Ex. C.  The 2017 MOA increased the contributions

Aknouk Dental was required to make to the Pension Fund.  *Id*. ¶ 15.  The MOA provides that

> [e]ffective May 1, 2017 the Employer will contribute 7% of the employee's weekly gross salary to the Local 854 Pension Fund.

*Id*.; 2017 MOA, Egidio Aff., Ex. D.

4

In 2018, the firm of Buchbinder Tunick & Company LLP performed an audit of Aknouk Dental's payroll compliance and discovered that Aknouk Dental did not submit contributions in the amount of $72,847 to the Health Fund and $8,065 to the Pension Fund for the period of January 1, 2017 through June 30, 2018 for various employees (the "2018 Audit"). *Id*. ¶¶ 17-18. The Funds provided Aknouk Dental with a copy of the 2018 Audit and requested that Aknouk Dental pay the unpaid amounts discovered by audit, plus interest. *Id*. ¶ 19. To date, Aknouk Dental has not made the payments identified as unpaid in the 2018 Audit. *Id*. ¶ 20.

According to Dr. Sameh H. Aknouk, the President of Aknouk Dental, the 2018 Audit identifies unpaid contributions for part-time employees. *See* Affidavit of Dr. Sameh H. Aknouk, ("Aknouk Aff.") [DE 45-2; DE 49-4], ¶¶ 9, 11, 14. It is undisputed that that contributions have otherwise been paid for full-time employees for the period from January 1, 2017 through June 30, 2018. Def.'s SOMF ¶ 6. In his Reply Affidavit, Dr. Aknouk further attests that Ramon Teron ("Teron"), an individual for whom contributions are shown to be owed in the 2018 Audit, was never employed by Aknouk Dental. *See* Reply Affidavit of Dr. Sameh H. Aknouk ("Aknouk Reply Aff."), ¶ 22. According to Dr. Aknouk, Aknouk Dental made a payment to Teron for certain office cleaning services but did not employ Ramon Teron. *Id*. Rather, Dr. Aknouk asserts that the landlord of the building leased by Aknouk Dental employed Teron. Aknouk Aff. ¶ 23.

Although outside the timeframe of the 2018 Audit, it is further undisputed that Aknouk Dental did not pay contributions in the amount of $2,254 to the Health Fund on behalf of its employee Dayana Tavares ("Tavares") for the period of July 2018 through September 2018. Pls.' SOMF ¶ 21; Def.'s SOMF ¶¶ 28-29. Tavares declined health benefits through the Union's health plan during her employment. She is also among the employees for whom the 2018 Audit

identifies unpaid contributions to the Health Fund.  Def.'s SOMF ¶¶ 28-29; 2018 Audit, attached to Egidio Aff. as Ex. E [DE 48-9].

The 2014 CBA also provides that "[t]he Employer further agrees to execute the Trust Agreement and become a party thereto, or agrees to be bound by the terms, obligations and conditions of the said Trust Agreement as amended and as may hereafter be amended."  2014 CBA, Art. 24, 25, Egidio Aff., Ex. C.  Pursuant to Article 7, Section 8 of the Trust Agreements, in the event that Aknounk Dental does not pay contributions owed to the Funds, it is required to pay:

(a) the unpaid Contributions;

(b) interest on the unpaid Contributions at such rates as the Trustees may fix from time to time or in particular cases;

(c) an amount equal to the greater of –

(1) interest on the unpaid Contributions at the rate specified above; or

(2) liquidated damages of twenty percent (20%) of the amount of the unpaid contributions; [and]

(d) reasonable attorney's fees and costs of any action necessary to recover any of the amount described in (a) through (c).

Health Trust Agreement, Art. 7, Sec. 8, Egidio Aff., Ex. B; Pension Trust Agreement, Art. 7, Sec. 8, Egidio Aff., Ex. B.  The Trustees adopted a Policy for Collection of Delinquent Contributions, Audits and Mistaken Contributions (the "Collection Policy"), pursuant to their authority under the Trust Agreements.  Pls.' SOMF ¶ 23; *see* Collection Policy, attached to Egidio Aff. as Ex. G [DE 48-11].  The Collection Policy provides that interest on delinquent contributions shall accrue "from the [d]ue [d]ate at the rate of 18% per annum for delinquent contributions due on or after January 1, 2016."  Collection Policy, Sec. 2 ¶ 3, Egidio Aff., Ex. G.

**B.    Procedural History**

On August 24, 2018, the Trustees commenced this action against Aknouk Dental to recover delinquent contributions owed to the Funds, pursuant to Sections 502(a)(3) and 515 of the ERISA, as amended, 29 U.S.C. §§ 1132(a)(3), 1145.  *See generally* Am. Compl.  The Trustees allege that Aknouk Dental failed to make pension contributions in the amount of $8,065 and health contributions in the amount of $72,847 for the period running from January 1, 2017 through June 30, 2018.  Am. Compl. ¶¶ 20-21.  The Trustees further claim that Aknouk Dental failed to make health contributions in the amount of $2,253 for the period running from July 2018 through September 2018 on behalf of its employee Dayana Taveras.  *Id*. ¶ 22.  The Trustees assert that they are entitled to interest plus the greater of the interest or liquidated damages, in addition to attorneys' fees and costs.  *Id.* ¶ 32.  Aknouk Dental filed an Answer on October 16, 2018.  *See generally* Answer [DE 7].

Discovery was completed on July 31, 2020.  *See* May 26, 2020 Electronic Order.  On February 12, 2021, the parties filed their cross-motions for summary judgment.  *See* DE 45-50. Judge Azrack referred the cross-motions to this Court on May 15, 2021 for a Report and Recommendation as to whether the motions should be granted.  *See* May 15, 2020 Electronic Order.

**III.    LEGAL STANDARDS**

**A.    Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby,*

7

*Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law .... Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The moving party bears the initial burden of establishing that there are no material facts in dispute and must provide "affirmative evidence" from which a factfinder could return a verdict in its favor.  *Id.* at 257.  Then "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."  *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

This standard applies to cross-motions for summary judgment. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *C & A Carbone, Inc. v. County of Rockland*, No. 08-CV-6459, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014).  Generally, in deciding cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales*, 249 F.3d at 121; *see also Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014).  But where, as here, the motion and cross-motion seek a determination of the same issues, the Court may consider them

together.  *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-CV-3770, 2015 WL

5098119, at *2 (S.D.N.Y. Aug. 31, 2015); *Chartis Seguros*, 3 F. Supp. 3d at 179.

**B.    Statutory Framework**

The obligations at issue in this case stem from Section 515 of ERISA, which provides as

follows:

> Every employer who is obligated to make contributions to a multi-employer plan
> under the terms of the plan or under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with law, make such contributions in accordance
> with the terms and conditions of such plan or agreement.

29 U.S.C. § 1145.

"The liability created by [ERISA] § 515 may be enforced by the trustees of a plan by

bringing an action in federal district court pursuant to [ERISA] § 502." *Laborers Health &*

*Welfare Trust v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988); *see also* 29

U.S.C. § 1132(a)(3) (allowing for civil actions brought by fiduciaries to enforce the provisions of

ERISA or the plan); 29 U.S.C. § 1132(e)(1) (providing exclusive federal jurisdiction for such

claims).

The Court of Appeals for the Second Circuit has recognized that an employer's

affirmative defenses to a Section 515 action are very limited.  *See Benson v. Brower's Moving &*

*Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) ("Our research has disclosed only two defenses

recognized by the courts: (1) that the pension contributions themselves are illegal, and (2) that

the collective bargaining agreement is void (not merely voidable).") (citations omitted); *N.Y.*

*State Teamsters Conference Pension & Ret. Fund v. United Parcel Serv., Inc.*, 382 F.3d 272, 280

(2d Cir. 2004) ("[We] have repeatedly barred employers from invoking as a defense an oral or

otherwise unwritten agreement with the union 'not to enforce the [written] terms of the collective

bargaining agreement' with respect to multiemployer plan contributions.") (citing *Benson*, 907

F.2d at 314). While third-party beneficiaries are generally subject to the defenses that the promisor could raise in a suit by the promisee, the courts and Congress granted funds special protection under the theory that benefit funds "must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." *Benson*, 907 F.2d at 314.

Benefit funds are not, however, "entitled to enforce a nonexistent contractual obligation." *DeVito v. Hempstead China Shop, Inc*., 38 F.3d 651, 653–54 (2d Cir. 1994) (citation omitted). "To prevail on an ERISA collection claim, the Fund must in the first instance establish the existence and scope of the employer's contractual obligation." *Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd.*, No. 14-CV-09581, 2017 WL 1208595, at *6 (S.D.N.Y. Mar. 31, 2017) (citing *Cement & Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994)); *see also Trustees of Bricklayers & Allied Craftworkers v. Charles T. Driscoll Masonry Restoration Co*., 165 F. Supp. 2d 502, 510 (S.D.N.Y. 2001) (finding that for summary judgment under ERISA Section 515, plaintiffs "must show that the Agreement creates an unambiguous contractual obligation on the defendants to make contributions pursuant to the contended provisions.").

### C.    Principles of Contract Interpretation in the Collective Bargaining Context

"When interpreting a CBA, courts apply the traditional rules of contract interpretation, provided that they are consistent with fair labor policies." *Aeronautical Indus. Dist. Lodge v. United Techs. Corp*, 230 F.3d 569, 576 (2d Cir. 2000). When provisions in the agreement are unambiguous, they must be given effect as written. *See Bozetarnik v. Mahland*, 195 F.3d 77, 83 (2d Cir. 1999). Only when provisions are ambiguous may courts look to extrinsic factors—such as bargaining history, past practices, and other provisions in the CBA—to interpret the language

in question.  *See United Mine Workers v. LTV Steel Co.*, 891 F.2d 1034, 1038 (2d Cir.

1989); *Roca v. Guardian Transp. Co.*, No. 99-CV-4996, 2002 WL 31082959, at *5 (S.D.N.Y.

Sept. 16, 2002) ("[W]hile extrinsic evidence may be used to shed light on ambiguous collective

bargaining agreements, it cannot be used when the terms of the agreement are unambiguous.").

Moreover, extrinsic evidence may not be used "to establish the ambiguity of a facially

unambiguous collective bargaining agreement."  *Keane v. Zitomer Pharmacy, Inc.*, No. 06-CV-

5981, 2010 WL 624285, at *3 (S.D.N.Y. Feb. 23, 2010).

　　　"[T]he determination of whether a contract contains ambiguous language is a question of

law."  *Demolition Workers Union v. Mackroyce Contracting Corp.*, No. 97-CV-4094, 2000 WL

297244, at *3 (S.D.N.Y. Mar. 22, 2000) (citation omitted).  "Contract language is ambiguous if it

is capable of more than one meaning when viewed objectively by a reasonably intelligent person

who has examined the context of the entire integrated agreement."  *In re Delta Airlines Inc.*, 313

Fed. App'x 430, 434 (2d Cir. 2009) (summary order) (citation omitted).  By contrast, contract

language "is unambiguous when it has a definite and precise meaning and where there is no

reasonable basis for a difference of opinion."  *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997).

　　　"Words and phrases ... should be given their plain meaning, and the contract should be

construed so as to give full meaning and effect to all of its provisions."  *LaSalle Bank Nat'l Ass'n*

*v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted).  "'[A]n

interpretation of a contract that has the effect of rendering at least one clause superfluous or

meaningless ... is not preferred and will be avoided if possible.'"  *Id*. (quoting *Shaw Group, Inc.*

*v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)).  "A court may not, in the guise of

interpreting a contract, add or excise terms or distort the meaning of those used to make a new

contract for the parties." *Riverside South Planning Corp. v. CRP/Extell Riverside, L.P.*, 60 A.D.3d 61, 66 (1st Dep't 2008).

## IV.   DISCUSSION

The central issue before the Court is whether Aknouk Dental is required to make contributions to the Funds for part-time employees under the terms of the 2014 CBA.  Although the parties maintain that the relevant language of the 2014 CBA is unambiguous, they disagree on the interpretation of the purportedly unambiguous language.  Relying on the definition of the bargaining unit and provisions of the 2014 CBA governing the contributions to be made to the Funds, the Trustees maintain that the 2014 CBA unambiguously requires Aknounk Dental to make contributions on behalf of all employees, irrespective of their full- or part-time status.  *See* Pls.' Mem. at 7-15; Pls.' Opp'n at 5-12.

Based on other terms of the 2014 CBA as well as Aknouk Dental's subjective intent and understanding and the parties' past practices, Aknouk Dental maintains that the 2014 CBA unambiguously requires contributions to be made on behalf of full-time employees only.  *See* Def.'s Mem. at 5-14; Def.'s Opp'n at 7-14.  Assuming contributions must be made for part-time employees, Aknouk Dental contends that contributions are not required for employees who have declined to receive health benefits.  *Id*. at 14-15; Def.'s Opp'n at 14-15.  Akouk Dental also raises two defenses to the Trustees' claim for delinquent contributions, namely, equitable estoppel and the failure to mitigate.  *See* Def.'s Opp'n at 7-8, 17-19.

The Court will address these arguments in turn.  Because the 2014 CBA expresses Aknouk Dental's obligation to contribute to the Pension and Health Funds differently, the Court will discuss separately the disputed phrases pertaining to each fund.

A.      **The Pension Fund**

Article 26 of the 2014 CBA -- which serves as the underlying contract for the later modifications by the 2017 MOA -- requires Aknouk Dental "to contribute monthly to the Trustees of the Local 854 Pension Fund…, 6% of the gross weekly salary…, for **all employees covered by this Agreement** who have completed their initial thirty (30) day trial period."  2014 CBA, Art. 26, Egidio Aff., Ex. C (emphasis added).  The 2014 CBA provides that the "Agreement [is] made … by and between [Aknouk Dental] …, and the [Union] for and on behalf of the said Union and the employees in the bargaining unit defined below, now employed and hereinafter employed by [Aknouk Dental]."  *Id*. at 1.  Therefore, the employees covered by the 2014 CBA are those that make up the bargaining unit.  Article 1 of the 2014 CBA, in turn, defines the bargaining unit as "**all of [Aknouk Dental's] employees**, excluding supervisor, guards and procession employees."  2014 CBA, Art. 1, Ex. C, Egidio Aff. (emphasis added).

The term "all employees covered by this Agreement" is not reasonably susceptible to any other meaning than the bargaining unit.  And the bargaining unit is unambiguously defined as "all of [Aknouk Dental's] employees," with certain exceptions that do not include part-time employees.  Had the drafters of the 2014 CBA so intended, they could have easily conditioned contributions to the Pension Fund on the status of an employee as full- or part-time -- or defined the bargaining unit covered by the CBA as all full-time employees.  They did not, and, consequently, the Court cannot assign the meaning "all ... employees" an interpretation contrary to its plain meaning.  *See New York Bakery Drivers & Indus. Pension Fund by Sweeney v. Colony Liquor Distributors, Inc.*, 993 F. Supp. 146, 149 (N.D.N.Y. 1998); *Nat'l Shopmen Pension Fund v. Burtman Iron Works, Inc*., 148 F. Supp. 2d 60, 64 (D.D.C. 2001) ("[B]ecause the collective bargaining agreement here does not specifically distinguish or exclude temporary

employees, the agreement requires contributions for temporary employees").  Therefore, the clear and unambiguous language of the 2014 CBA compels the conclusion that Aknouk Dental was obligated to make contributions to the Pension Fund on behalf of all employees who have completed their initial 30 day trial period, notwithstanding their full- or part-time status,.

Presented with similar language in a disputed CBA, the court in *Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd.*, No. 14-CV-09581, 2017 WL 1208595, at *6 (S.D.N.Y. Mar. 31, 2017) reached a similar conclusion.  In *Bldg. Serv. 32BJ Health Fund*, the trustees of ERISA benefits funds sought delinquent contributions to those funds on behalf of all employees. *Id*. at *1.  Relying on extrinsic evidence regarding the parties' bargaining history and past practices of the trustees, the employer argued that it was only required to make contributions to the funds for welders.  *Id*. at *4-5.  The language of the CBA required contributions to the funds for "each employee" or "per employee" and the bargaining unit was defined, in pertinent part, as "all employees."  *Id*. at *2.  Moreover, "all employees covered by th[e] Agreement" were required to be members of the Union, which was more specifically defined as "all persons, except partner, … and except supervisory and office personnel."  *Id*. at *2, 5.  The court rejected the employer's attempt to introduce extrinsic evidence regarding the bargaining history and past practices of the parties, and held that the "terms 'all employees' … and 'all persons' … are not reasonably susceptible to mean 'welders only,' or to any meaning other than 'each and every employee'" of the employer.  *Id*. at *6.

Aknouk Dental acknowledges that the bargaining unit, as defined by Article 1, includes "all of its employees," but contends that various other provisions of the 2014 CBA "provide further clarity as to which employees are intended to be represented by the Union, and supports [the] position that the CBA only applies to full-time employees."  Def.'s Mem. at 9.

14

Specifically, Aknouk Dental points to the provisions of the 2014 CBA which set forth its employees' regular work week, holiday pay, and time off.  *Id*. at 9-10.  According to Aknouk Dental, interpreting the bargaining unit to include part-time employees would render these provisions "superfluous or meaningless" or would otherwise lead to an "absurd" and "illogical result."  *Id*. at 9, 11-12.  In further support of its argument, Aknouk Dental points to the testimony of its president, Dr. Aknouk, who asserts that his understanding was always that the bargaining unit was comprised of full-time employees and that, in the past, the Trustees only required contributions for full-time employees.  *Id*. at 12-14.

Aknouk Dental's reliance on other unrelated provisions of the 2014 CBA as well as past practices, and the testimony of its own intent and understanding of the contract – all extrinsic factors -- is unavailing.  Only in the event that the relevant language in a CBA is ambiguous "may courts look to extrinsic factors—**such as bargaining history, past practices, and other provisions in the CBA**—to interpret the language in question."  *See Bldg. Serv. 32BJ Health Fund*, 2017 WL 1208595, at *5 (quoting *Aeronautical Indus*., 230 F.3d at 576) (emphasis added); *HOP Energy, L.L.C. v. Local 553 Pension Fund*, 678 F.3d 158, 162 (2d Cir. 2012) ("With unambiguous contracts, a party's subjective intent and understanding of the terms is irrelevant.").  Notably, neither party argues, nor does the Court find, that the language of the 2014 CBA relevant to the Pension Fund contributions is ambiguous.

While courts arguably may not consider other unrelated provisions in the CBA unless the relevant language of the CBA is ambiguous, *see Aeronautical Indus*., 230 F.3d at 576, the traditional rules of contract interpretation require courts to "examine[] the context of the entire integrated agreement" when  construing the contract's language.  *Bldg. Serv. 32BJ Health Fund*, 2017 WL 1208595, at *4 (citation omitted); *see also Gibbs v. CIGNA Corp.,* 440 F.3d 571, 578–

79 (2d Cir. 2006) (recognizing that contract provisions must be construed in "context of the entire integrated agreement" as objectively viewed by a "reasonably intelligent person"); *McCutcheon v. Colgate-Palmolive Co.*, No. 16-CV-4170, 2020 WL 3893303, at *9 (S.D.N.Y. July 10, 2020) ("The court is to 'review the Plan as a whole, giving terms their plain meanings.'") (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)); *In re AMR Corp.*, 485 B.R. 279, 303 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013) ("New York law provides that a court should construe a contract in a way that reasonably harmonizes its provisions and avoids inconsistencies.") (citation omitted).  In doing so, the Court does not find that the provisions of the 2014 CBA related to the employees' regular work week, holiday pay, and time off compel a different interpretation of the language relevant to Pension Fund contributions than the one reached.

Article 6 provides that the "regular work week for employees shall be between thirty-six (36) and forty (40) hours per week…. There shall be no reduction of weekly wages in the event that the work week is reduced by operation of law at any time."  2014 CBA, Art. 6, Egidio Aff., Ex. C.  This provision establishes the minimum hours Aknouk Dental's employees are entitled to work in a regular week.  It entitles the bargaining unit to a "benefit" -- it does not by any specific terms serve to define the bargaining unit.  The fact that Aknouk Dental did not ultimately provide the bargaining unit with the entitlements it negotiated does not change the identity of the bargaining unit.  Assuming the provision does serve to further define the bargaining unit, while it may entitle employees to work 36 to 40 hours during a regular work week, it also contemplates a reduction of those hours in the sentence which immediately follows.  For this reason, Article 6 cannot be interpreted to exclude part-time employees from the bargaining unit.  Nor would

interpreting the bargaining unit to include part-time employees render this provision "superfluous or meaningless."

This interpretation also does not lead to "absurd" or "illogical results" when considering the provisions of the 2014 CBA related to holiday pay and time off.  *See Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 11-CV-8440, 2012 WL 3822624, at \*3 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 513 Fed. App'x 109 (2d Cir. 2013) ("The Court must avoid interpreting a contract in a manner that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'") (quoting *In re Lipper Holdings, LLC,* 1 A.D.3d 170, 766 N.Y.S.2d 561, 561 (1st Dep't 2003)).  Admittedly, interpreting the bargaining unit to include part-time employees confers generous benefits to part-time employees, including holiday pay and time off for vacations, leaves of absence, death in the family and personal days.  However, Aknouk Dental does not provide any legal authority to support the contention that such resulting benefits are absurd or commercially unreasonable.  A result that may be economically unfavorable to an employer does not necessarily render it absurd or commercially unreasonable.  Contrary to Aknouk Dental's position, it is its own interpretation of the bargaining unit which would lead to an absurd or commercially unreasonable result.  As the Trustees point out, if the bargaining unit consisted solely of full-time employees, Aknouk Dental could simply reduce the hours of its employees to just shy of 36 hours to avoid any of its obligations under the 2014 CBA, which would render the entire agreement meaningless.

Under the clear and unambiguous language of the 2014 CBA, the Court finds that Aknouk Dental is obligated to make contributions to the Pension Fund on behalf of all employees, irrespective of their full- or part-time status, who have completed their initial 30 day trial period.  Notwithstanding this finding, summary judgment on the Trustees' claim for

delinquent contributions to the Pension Funds is not appropriate at this juncture because genuine issues of material fact exist as to (1) whether all of the individuals identified in the 2018 Audit qualify as employees, notwithstanding their full- or part-time status, and (2) Aknouk Dental's equitable estoppel defense.

In his Reply Affidavit, Dr. Aknouk attests that Ramon Teron, an individual for whom contributions are owed based on the 2018 Audit, was never employed by Aknouk Dental. Aknouk Reply Aff. ¶ 22. According to Dr. Aknouk, Aknouk Dental made a payment to Ramon Teron for certain office cleaning services but did not employ Teron. *Id*. Rather, Dr. Aknouk attests that the landlord of the building leased by Aknouk Dental employed Ramon Teron. Aknouk Aff. ¶ 23.

Moreover, relying on the past practices and representations of the Trustees asserted by Dr. Aknouk, Aknouk Dental posits the defense of estoppel to preclude the Trustees from asserting a claim for delinquent contributions. *See* Def.'s Opp'n at 16-17. Rather than substantively addressing Aknouk Dental's estoppel defense, the Trustees argue that the defense is precluded under *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310 (2d Cir. 1990). *See* Pls.' Reply at 11-12; Pls.' Opp'n at 13-14. Although not expressly addressed in their memoranda of law, the Court notes that the Trustees submitted the Affidavit of Danisha Roman-Reyes, the shop steward for the Union for the past 15 years, in which Ms. Ramon-Reyes appears to dispute Aknouk Dental's characterization of the parties' and the Union's past practices and representations as to the contributions required to be made on behalf of part-time employees. *See generally* Affidavit of Danisha Roman Reyes ("Roman-Reyes Aff.") [DE 46-2; DE 50-2].

As the Trustees' point out, "[t]he Second Circuit [in *Benson*] recognized only two defenses to an action under [s]ection 515 to collect contributions pursuant to a CBA:  (1) that the

pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." *Cent. N.Y. Laborers' Health v. JWJ Indus., Inc.* ("*JWJ Indus.*"), No. 12-CV-1319, 2015 WL 12564221, at *15 (N.D.N.Y. Mar. 5, 2015) (citing *Benson*, 907 F.2d at 314). "However, multiple courts in this Circuit have recognized an important distinction between (1) the defenses considered in *Benson*, which depend on 'the formation and enforcement of the CBA;' and (2) defenses 'focus[ed] on the actions of the Funds,' which typically are not parties to such agreements." *Upstate New York Engineers Health Fund v. John F. & John P. Wenzel Contractors, Inc.*, No. 17-CV-0570, 2019 WL 1208230, at *7 (N.D.N.Y. Mar. 14, 2019) (citing *Trs. of Local 813 Ins. Trust Fund v. Wilner's Livery Serv., Inc.*, No. 11-CV-3180, 2012 WL 4327070, at *6 (E.D.N.Y. Sept. 19, 2012)). "Interpreting section 515 as referring solely to the "conduct of the parties who negotiated and executed the writing which created § 1145 liability"—in this case, the CBAs—those courts have allowed employers to raise as a defense against benefit funds any of their actions which amount to, among other things, 'laches, waiver, fraud, estoppel, misrepresentation, or accord and satisfaction.'" *Id*. (citing *Williams v. Salt City Painting, Inc*., No. 91-CV-320, 1992 WL 265944, at *12 (N.D.N.Y. Oct. 1, 1992)). Therefore, "even if a CBA's terms unambiguously impose a contribution obligation on an employer, *Benson* still allows that employer to raise equitable defenses against the funds themselves, including under an estoppel theory." *Id*. at *9; *see also Wilner's Livery Serv.*, 2012 WL 4327070, at *3–6 (allowing an equitable estoppel defense against plaintiff funds); *JWJ Indus,* 2015 WL 12564221, at *15 (same); *Cent. New York Laborers' Health by Moro v. Fahs Constr. Grp., Inc.,* No. 13-CV-0226, 2017 WL 5160119, at *6 (N.D.N.Y. Apr. 5, 2017) (same); *King v. Unique Rigging Corp.,* No. 01-CV-3797, 2005 WL 2290585, at *4 (E.D.N.Y. Sept. 20, 2005); *Heffernan v. iCare*

*Mgmt., LLC*, 356 F. Supp. 2d 141, 154–55 (D. Conn. 2005) (same).  Therefore, the Court finds

that Aknouk Dental should be permitted to pursue is equitable estoppel defense here.

For the foregoing reasons, the Court respectfully recommends to Judge Azrack that the

parties' cross-motions for summary judgment as to Aknouk Dental's contribution obligations to

the Pension Fund be DENIED.

### B.      The Health Fund

Article 25 of the 2014 CBA provides that "[e]ffective May 15, 2015, the Employer will

contribute $751.00 per month **per eligible employee**, Plan 5, to Health & Welfare Benefits Plan,

Local 854, I.B. of T."  2014 CBA, Art. 25, Egidio Aff., Ex. C (emphasis added).  The 2017

MOA states that the "employer shall continue to provide health coverage to all **eligible**

**employees**."  2017 MOA, Egidio Aff., Ex D (emphasis added).

Like the language requiring Pension Fund contributions, the Trustees maintain that

"eligible employee(s)" means the bargaining unit, including full- and part-time employees.  *See*

Pl.'s Opp'n at 14-15.  Aside from its subjective understanding of the 2014 CBA, the Trustees do

not point to any language in the 2014 CBA or to any legal authority to support this contention.

*Id*. at 14-17.  Unlike the contributions required to be made to the Pension Fund for "all

employees covered under this Agreement," the 2014 CBA requires contributions to the Health

Fund "per eligible employee."  *Id*.  On the most basic level, the words are different, suggesting

that the drafters of the 2014 CBA meant to indicate two different things.  *See McCutcheon v.*

*Colgate-Palmolive Co.*, 481 F. Supp. 3d 252, 263 (S.D.N.Y. 2020).  The qualifier "eligible"

serves to exclude certain employees for whom Aknouk Dental must make contributions to the

Health Fund.  *See Cap. Cities/ABC, Inc. v. Ratcliff*, 953 F. Supp. 1228, 1236 (D. Kan.

1997), *aff'd*, 141 F.3d 1405 (10th Cir. 1998) ("[A]lthough the language of the remaining three

plans is not as specific, the use of the term 'eligible employee' in those plans indicates an intent to exclude certain workers from participation."). However, neither the 2014 CBA, nor the 2017 MOA, define the term "eligible employee(s)."

Pointing to language immediately following the sentence which obligates it to make contributions "per eligible employee," Aknouk Dental argues that an "eligible employee" is unambiguously defined by the 2014 CBA as one who elects to participate in the Union's health plan. *See* Def.'s Mem. at 14-15. The language at issue provides that

> Employees shall become **eligible to participate** in the Plan 5 medical benefits of the Health & Welfare Benefits Plant [sic], Local Union 854, International Brotherhood of Teamsters, following the receipt by the Trustees of two (2) consecutive monthly contributions from the Employer on the employee's behalf.

2014 CBA, Art. 25, Egidio Aff., Ex. C (emphasis added). This language speaks to timing of the contribution, not to identification of the employees. It sets forth *when* an "eligible employee" is "eligible to participate" in the Union's health plan; it does not set forth *who* is an "eligible employee." Interpreting the language any other way would be unreasonable because it would make Aknouk Dental's act of contributing to the Health Fund a condition precedent to an employee becoming an "eligible employee(s)." Because Aknouk Dental is not obligated to contribute to the Health Fund in the first instance unless there is an "eligible employee(s)," its obligation to contribute to the Health Fund might never arise. This would render Article 25 of the 2014 CBA completely meaningless. *See, e.g.*, *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("[T]he contract 'should be construed so as to give full meaning and effect to all of its provisions' " and "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible.") (citation omitted); *Chachkes v. David*, No. 20-CV-2879, 2021 WL

101130, at *7 (S.D.N.Y. Jan. 12, 2021) ("[T]he court must, where possible, avoid an interpretation that renders language surplusage.").

Moreover, this language does not reference or impose any requirement to participate in the Union's health benefits upon becoming eligible to participate. Aknouk Dental is attempting to impose a condition precedent (*i.e.,* an employee's participation in the Union's health benefits) to its obligation to contribute to the Health Fund when none is suggested, let alone clearly and unambiguously set forth, in the language of the 2014 CBA. "Whether language in a contract is a condition precedent depends on the parties' intent as gathered from the language of the contract." *Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan*, 239 F. Supp. 3d 710, 734 (S.D.N.Y. 2017) (quoting 17A Am. Jur. 2d *Contracts* § 449 (1964)). In general, "[a] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." *Id.*; *see also AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 625 (2d Cir. 1996) (same); *Sciascia v. Rochdale Vill., Inc.*, 851 F. Supp. 2d 460, 477 (E.D.N.Y. 2012) ("It is well-settled that 'a contractual duty is not to be construed as a condition precedent unless the language of the contract clearly imposes such a condition.'") (citation omitted).

Yet the plain meaning of "eligible employee(s)" is ambiguous and is subject to more than one reasonable interpretation. Because the parties have raised conflicting interpretations and have submitted extrinsic evidence supporting their respective positions, the Court cannot conclusively resolve this issue on summary judgment. *See Pace Indus. Union-Mgmt. Pension Fund v. Robert Wood Johnson Univ. Hosp.*, No. 15-CV-1032, 2017 WL 2536883, at *11 (M.D. Tenn. June 12, 2017); *Heffernan.*, 356 F. Supp. 2d at 154–55 (denying summary judgment "[b]ecause the term 'person' is not defined, and given the other ambiguities relating to the

Welfare Fund contributions, the Funds have not demonstrated that the CBA language at issue is subject to one reasonable interpretation"); *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 654 (2d Cir. 1994) (finding that summary judgment is inappropriate where a textual ambiguity existed in a CBA which warranted "exploration of extrinsic evidence concerning the parties' intent"). Moreover, as noted above, there are genuine issues of material fact as to (1) whether all of the individuals identified in the 2018 Audit qualify as employees, irrespective of their full- or part-time status, and (2) Aknouk Dental's equitable estoppel defense.

Therefore, the Court respectfully recommends to Judge Azrack that the parties' cross-motions for summary judgment as to Aknouk Dental's contribution obligations to the Health Fund be DENIED.[2]

## V.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Azrack that the parties' cross-motions for summary judgment be DENIED.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from entry of this Report and Recommendation on ECF to file written objections. *See* Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. Any objections by a *pro se* party shall be filed with the Clerk of the Court by overnight mail or regular mail. **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joan M. Azrack. Any requests for an extension of time for filing objections must be directed to Judge Azrack**

---

[2]     Because the Court has recommended denial of the parties' cross-motions for summary judgment as to liability, the Court has not addressed the parties' arguments regarding damages, interest, and attorneys' fees and costs.

**prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *E.g.*, *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
        August 27, 2021

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge